Last case of the day to be argued is docket number 23-1315, K. A. v. HHS. Mr. Krakow, please begin whenever you're ready. Thank you, Governor. Good morning. May it please the Court. This is a case where a vaccine-injured petitioner was denied the opportunity to present evidence that was central to the case, central to the respondent's expert's presentation, that is that there was an infectious disease that more likely caused the injury, and was denied the opportunity to present his expert, an infectious disease, and biostatistics, even though the decision ultimately focused on those issues. The Court below the special master noted the appearance of an upper respiratory infection, which was undefined, undiagnosed, unspecified, mere a cluster of symptoms, was more likely an infectious disease. We offered a proof in a formal motion to present the expert testimony of an infectious disease specialist because we were concerned that the presentation of our neurologist, who is a National Academy of Sciences member and so on, but in neurology, would testify outside the scope of his expertise. My understanding of the expert you wanted to add to the record that could comment on infectious diseases, that could potentially have helped you with what I'll call Alfen Prong 2, but I don't see how it relates to Alfen Prong 1, which is your burden at Prong 1 to establish that there is some kind of medical or scientific probable theory that this vaccine could cause this particular injury. Is that correct to say, that this infectious disease expert wouldn't really help do anything to support and further your case for this mimicry idea? Correct to say that the infectious disease expert would not offer affirmative testimony about Prong 1. Yeah. There's a weighing of the relative strength of the theories, and the court focused on the infectious disease. By the way, there was no mechanism for the infectious disease other than molecular mimicry, which is the primary way we understand that molecular mimicry plays a role. What I'm trying to understand is how would this additional expert help you with Alfen Prong 1? In terms of the molecular mimicry? In terms of the molecular mimicry. Your proposed expert would not have further supported your case on molecular mimicry. Is that right? No, and we wouldn't have relied on that expert for that purpose. I guess I'm trying to figure out how does this actually help your case, because even if it's relevant to Alfen Prong 2, it wouldn't do anything to help your cause on Alfen Prong 1, which the special master and then affirmed by the claims court concluded that you had not sufficiently made your case for. Well, we don't agree that it wouldn't have helped us on Prong 1, even though it's not direct, because there's a relative strength issue of what you're focusing on. Here, the special master found it was indisputable that infectious disease played a role and didn't have a full discussion of Prong 1, probably because he didn't feel it was necessary. However, if you weigh the relative strength and the mechanism of our theory, an infectious disease expert would place that into context. So even though it wasn't going to be direct, there was still relevant testimony to be offered. And also what the government decision wants to do is silo Prong 1 and separate it from the other prongs. And the case law is clear that you can consider evidence of other prongs that inform the relative strength of Prong 1. And whether it was more likely than not, that theory was the more likely theory or a theory that was plausible and met the standard of proof. So in that way, our presentation of infectious disease expert would be relevant to that. In addition, the court relied heavily on biostatistics and epidemiology for rejecting our Prong 1 evidence. And we moved for permission to present the testimony of an epidemiologist or biostatistician. It was rejected summarily. So that would go directly to the issue because the court relied on the biostatistics for rejecting our Prong 1 theory. How common is it for the switch in causation theories to happen several years into a given case? I'm sorry. How common is it in cases that you've seen for there to be a switch in the causation theory several years into a case? So we switched. I think Your Honor is referring to our initial theory was predicated primarily on aluminum as an adjuvant. And then Dr. Steinman offered an expert report. How common? Probably not that common, but it does happen. Because you can present alternate theories. You can present multiple theories. These are not necessarily theories that are definite in science. And the case law says, the Court of Appeals says, that this field is bereft of knowledge of exactly how vaccines affect the human body. So what is your best argument for why there would be an abuse of discretion in terms of not allowing you to get these additional experts? The best argument for why there's abuse of discretion would be that we were not, the Petitioner was not presented a full and fair opportunity to present his case. But you had multiple years to put on a case, and you had your expert file many expert reports during that time. And you had the information on hand about the respiratory infection that you could have years earlier responded to. And so I think that seemed to be what was driving the Special Master, to conclude that you were on notice about the respiratory infection idea, and you waited too late. So I guess what I'm trying to figure out is why is that an unreasonable conclusion? I appreciate the question. First of all, the Special Master in his decision, I don't think, and we presented this in our brief, appreciated the record. He said that we made an 11th hour request to present our additional experts. We made that request two years earlier. Well, before the decision or when it was transferred to the Chief Special Master, in 2020, March of 2020, we first raised that issue. We made a formal motion in May 2020. It was a year and a half later, it was transferred. And two years later, we have a decision. So I would submit that we were not late in the process. Yes, the idea was by the time you requested this in 2020, the case had been already going on since 2016. The government filed its 4C report in 2017. And so, therefore, you had three years and, you know, marching through that whole time with other expert reports being filed. There was plenty of time, it seems like, in that interim space to have tried to switch horses, so to speak, and move on to this. Well, two points in response to that question. I appreciate the question. One is Dr. Steinman did address the issue. But it became increasingly apparent that Dr. Steinman, in addressing that issue, may, as I mentioned earlier, go beyond the scope of his expertise because it's not an infectious disease. And there came a point where Dr. Collins, who is an expert in infectious disease, emphasized her point two or three times. At that point, it became clear we would need, and it was not necessarily late in the process. It was in the middle of the process. And I don't think there was any forfeiture of an opportunity to present that evidence when it became clear, and as it was established, that the chief special master would criticize Dr. Steinman, the neurologist, for testifying outside the scope of his expertise. So we decided it was important to present our experts at that point. But it was not late in the process. It was in the middle of the process. We still filed additional expert reports after we made the application to present the expert in infectious disease and biostatistics. So should we have done it earlier? It would have been, I think, in retrospect, yes. And in any case like this in the future, we'll do that right at the outset. But we're relying on Dr. Steinman, who is an esteemed neurologist. But if the court is going to reject his presentation on that issue, which it did in the decision, we want an opportunity, a full and fair opportunity, to directly address the issues head on. So I would submit it wasn't late. It was in time. It was not at the outset, not right after the 4C. But when it became apparent that Dr. Steinman's presentation was not going to be accepted on that specific aspect, which then appeared, as it occurred in the decision, to be the primary issue in the case. Okay. Well, why don't we save the remainder of your rebuttal. Let's hear from the government. Thank you, Your Honors. Good morning. May it please the Court. My name is Nina Ren, and I represent Respondent Apelli, the Secretary of Health and Human Services. The Chief Special Master below made separate findings under each of the ELP and PRONs. So the entitlement decision below did not rest only on epidemiology, and a biostatistician would not have advanced Petitioner's cause. Nor did the entitlement decision rely on the presence of an influenza-like illness, and thus an infectious disease specialist would have made no difference in the ultimate outcome of the case. Under ELPIN1, the Chief Special Master denied entitlement because Petitioner failed to present a causation theory that rose beyond a theoretical possibility. The Chief Special Master found that Dr. Steinman never produced any reliable evidence to overcome the fatal flaw in his molecular mimicry theory, namely that even if we accept molecular mimicry as a general theory, homology, no matter how many times you filter it through, is necessary but not sufficient to cause actual disease. And in his decision, he cites Dr. Steinman's report and that Dr. Steinman himself recognizes the flaw in his theory. There's another reason why a biostatistician is unnecessary in this case. As the Chief Special Master stated, he was already familiar with the two primary studies at issue, Baxter 1 and Baxter 2, because they are frequently presented in the vaccine program. He simply didn't need an additional specialist to understand the epidemiology presented in this particular case. Moreover, Petitioner's own expert, Dr. Steinman, wrote in his first report that he had relevant experience qualifying him to address epidemiology and that he had actually gained some deep insights on how difficult it was to do proper epidemiologic studies. So Dr. Steinman put himself forward as someone who is qualified to opine on biostatistics and in fact did do so. So if the Special Master was fine with allowing Dr. Steinman to opine on all these things, why did the Special Master prevent an additional expert from opining on these very same things? Because it wouldn't have made a difference, and I think it was within the Chief Special Master's purview as a fact-finder in the case to oversee litigation and decide when it is time to move forward. I'm just trying to figure out would there have been additional delay in entertaining a second expert on the Petitioner's side compared to just confining things to Dr. Steinman? There would have been additional delay. In terms of the biostatistician, based on what Petitioner has argued, they would have retained a new expert. There is sort of an unknown quantity of time that would take for that expert to become acquainted with the entire record in the case to render his or her opinion, and then respondent would then have the opportunity to respond and retain a biostatistician ourselves because our expert, Dr. Collins, also wasn't an epidemiologist. So that would have added even further time, and the case has already been lingering for quite some time. Opposing counsel contends that they didn't wait too late. It wasn't an 11th hour request. It was done as soon as they could. How do you respond to that? I would disagree. As this Court has noted, respondent had already issued our Rule 4C report where we sort of laid out our objections and what we felt were issues precluding Petitioner from entitlement in this case. We had cited to the medical records that Petitioner had himself filed, showing the language from treating providers that the respiratory infection was something that they were thinking about in terms of having a causal connection with Petitioner's GBS. And Petitioner's petition itself, the one that he filed in August 2016, raised the issue of that infection as one of the allegations that he made in the petition. So all this information, including when we filed Dr. Collins' first report and her CV by December 2017, Petitioner had all the notice they needed, more notice than they needed, to inform their litigation strategy. And they could have retained an infectious disease specialist if that's how they wanted to proceed. And they didn't. They chose to proceed with Dr. Simon and they chose to present additional reports from him. I also want to address the point that Petitioner's counsel made regarding the time it took between shifting from the initial special master in the case to the chief special master. And I think looking at the docket from that time frame, that was a period when the parties agreed to attempt informal resolution of the case. And from the docket entries, I think it's clear that a respondent was waiting a demand from Petitioner. And after a certain number of status reports from Petitioner indicating that the demand had not yet been proffered, the case was reassigned to the chief special master, who then determined at that time that a ruling on the record was appropriate. I think another point I just wanted to highlight is that it is evident in Petitioner's motion for leave, which was duplicated in the brief before us today, that the intent of the additional specialists, the additional new experts, was to re-argue the case. I think as Petitioner's counsel sort of noted earlier in his opening, that Dr. Collis has emphasized her opinion several times already. And at that point, they wanted to bring in someone else to address her comments. And that is not the intent of the full and fair opportunity, is not to allow re-argument of evidence to give you unlimited opportunity to present your case. And I think the chief special master acted within his purview. He didn't abuse his discretion when he elected to proceed with a ruling on the record. If there are no other questions, I will close by saying the special masters below reasonably concluded that it was not necessary to add new experts this late in the process. The special masters appropriately acted within their discretion, and the chief special master appropriately denied entitlement. Respondent respectfully requests that this court affirm the claims court's judgment dismissing the petition. Thank you very much. Okay, thank you. On rebuttal, I have three main points. First of all, if the special master felt he already, chief special master felt he already had sufficient knowledge about epidemiology to judge this case, he pre-judged the case, which is why we wanted an opportunity to present our biostatistician. That's number one. Number two is there would have been no delay whatsoever. We still had a year. We had other expert reports that were filed. We didn't have to wait for those expert reports to file the expert reports of our infectious disease expert or our epidemiologist. It would be done simultaneously, and we made the motion. We were ready to go. We were simply denied the opportunity to do it. So there would have been no additional delay. Thirdly, we weren't offering to re-argue points. We were offering to argue points from the perspective of a new expert with expertise in the particular domains that were raised. So that's not re-arguing. Dr. Steinman presented his view of those issues as a neurologist. We wanted to present it from the point of view of an infectious disease expert and an epidemiologist because it became apparent and proved to be true that those were the two main focuses of the chief special master. And so we were denied a full and fair opportunity to present that evidence. It wasn't re-argument evidence. It wasn't cumulative evidence. It was new evidence that we offered to present, and we were summarily denied without an explanation. So for those reasons, Your Honor, I believe the petitioner, the vaccine-injured petitioner, was denied a full and fair opportunity to meet his burden of proof. And this Court has recently said that's the petitioner. In the Winkler case, the petitioner has the burden of proof. We were trying to meet our burden of proof. We should have been given an opportunity to do that, and we were denied. Thank you. Unless there are further questions. Thank you, Mr. Krakow. The case is submitted, and that concludes today's arguments.